FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JAN 28 P 4: 30

CLERK'S OFFICE
BALTIMORE

BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 14-0041 |
| | * | |
| ANTHONY JEAN-CLAUDE, | * | (Money Laundering, 18 U.S.C. § |
| | * | 1956(a)(1)(B)(i)) |
| Defendant | * | |
| | * | |

*******

## INFORMATION

### COUNT ONE
(Laundering of monetary instruments)

The United States Attorney for the District of Maryland charges:

1. At all times relevant to this Information, waste collection businesses were in the business of collecting, refining, and selling waste vegetable oil (hereinafter "WVO"). These waste collection businesses collected WVO from restaurants and processed it into yellow grease, which was then either made into bio-diesel fuel for motor vehicles or processed for animal feed.

2. Each of these waste collection businesses negotiated individual contracts with local restaurants to collect the WVO. Once a contract was signed, the waste collection business placed a recycling container behind the restaurant so that restaurant employees could use the container to empty used cooking grease. When the container was full, a waste collection business would send a vacuum truck to the restaurant and empty the recycling container.

3. At all times relevant to the Information, **ANTHONY JEAN-CLAUDE** ("**JEAN-CLAUDE**") lived in the District of Maryland.

4. A.R. was the owner of PME Towing company. In May, 2010, **JEAN-CLAUDE** suggested that he and A.R. could make money stealing WVO from restaurants in Maryland and

Virginia and selling it to out-of-state oil companies. Shortly thereafter, **JEAN-CLAUDE** and A.R. began stealing WVO from various restaurants in Prince George's County, MD, Washington, D.C., and northern Virginia using A.R.'s flatbed truck from PME Towing to transport the WVO in interstate commerce, in violation of 18 U.S.C. Section 2314, Transportation of Stolen Goods (hereinafter the "specified unlawful activity"). A.R. subsequently developed some legitimate WVO collection contracts.

5. In late 2011, **JEAN-CLAUDE** met R.F. during a home renovation project at **JEAN-CLAUDE**'s home. **JEAN-CLAUDE** suggested that he and R.F. go into the WVO business, and requested that R.F. lease a large warehouse facility to store WVO. R.F. leased a warehouse located at 1701 Leland Avenue, Middle River, MD, for the purpose of collecting WVO, processing it, and selling it.

6. A.R. took both his legitimate WVO and stolen WVO to R.F.'s collection facility at 1701 Leland Avenue, Middle River, MD. **JEAN-CLAUDE** would then arrange for the refined WVO to be sold to a fuel company in Pennsylvania, among others. This Pennsylvania fuel company would send trucks to the location at 1701 Leland Avenue, Middle River, MD, load the WVO, and transport it back to the fuel company's location in Pennsylvania.

7. The proceeds from these transactions were directed back to **JEAN-CLAUDE** through a nominee "Rafxcel Services" bank account. **JEAN-CLAUDE** told R.F. to open up a business bank account in the name of "Rafxcel Services" to receive the payments from companies that purchased refined WVO that A.R. and others sold to **JEAN-CLAUDE**. R.F. opened a "Rafxcel Services" business bank account at Bank of America, account number ending in 2572. Both **JEAN-CLAUDE** and R.F. had signature authority for this account. From January 5, 2012 through October 1, 2012, Rafxcel received approximately $1,586,747 for selling

WVO to multiple oil companies, at least one of which was located in Pennsylvania.

8. R.M. was **JEAN-CLAUDE's** operations manager at the 1701 Leland Avenue warehouse facility. R.M. received checks from **JEAN-CLAUDE** in the name of R.M.'s wife, M.G., drawn on the RAFXCEL Bank of America account ending in 2572. **JEAN-CLAUDE** directed R.M. to cash the checks, use a portion of that cash for the operations of the Leland Avenue facility, and give the remainder of the cash back to **JEAN-CLAUDE**. The following checks were written to M.G. and signed by **JEAN-CLAUDE**, and cashed by M.G., for the purpose of diverting the cash back to **JEAN-CLAUDE**, in the manner described above:

| Check | Account Name | Account No. | Date | Check No. | Amount | Person on Check |
|---|---|---|---|---|---|---|
| 1 | RAFXCEL(BOA) | 2572 | 1/19/2012 | 991 | 7,5000.00 | M.G. |
| 2 | RAFXCEL(BOA) | 2572 | 1/23/2012 | 1003 | 7,000.00 | M.G. |
| 3 | RAFXCEL(BOA) | 2572 | 1/24/2012 | 1004 | 1,000.00 | M.G. |
| 4 | RAFXCEL(BOA) | 2572 | 1/27/2012 | 1008 | 9,050.00 | M.G. |
| 5 | RAFXCEL(BOA) | 2572 | 2/3/2012 | 1010 | 9,900.00 | M.G. |
| 6 | RAFXCEL(BOA) | 2572 | 2/6/2012 | 1011 | 4,488.66 | M.G. |
| 7 | RAFXCEL(BOA) | 2572 | 2/10/2012 | 1013 | 9,900.00 | M.G. |
| 8 | RAFXCEL(BOA) | 2572 | 2/17/2012 | 1017 | 8,750.00 | M.G. |
| 9 | RAFXCEL(BOA) | 2572 | 2/27/2012 | 1019 | 9,195.00 | M.G. |
| 10 | RAFXCEL(BOA) | 2572 | 3/5/2012 | 1020 | 9,900.00 | M.G. |
| 11 | RAFXCEL(BOA) | 2572 | 3/6/2012 | 1022 | 5,075.00 | M.G. |
| 12 | RAFXCEL(BOA) | 2572 | 3/13/2012 | 1023 | 300.00 | M.G. |
| 13 | RAFXCEL(BOA) | 2572 | 3/16/2012 | 1025 | 1,000.00 | M.G. |
| 14 | RAFXCEL(BOA) | 2572 | 3/19/2012 | 1026 | 9,700.00 | M.G. |
| 15 | RAFXCEL(BOA) | 2572 | 3/26/2012 | 1028 | 9,900.00 | M.G. |
| 16 | RAFXCEL(BOA) | 2572 | 3/29/2012 | 1031 | 200.00 | M.G. |
| 17 | RAFXCEL(BOA) | 2572 | 4/2/2012 | 1032 | 9,900.00 | M.G. |
| 18 | RAFXCEL(BOA) | 2572 | 4/9/2012 | 1034 | 7,200.00 | M.G. |
| 19 | RAFXCEL(BOA) | 2572 | 4/9/2012 | 1036 | 1,500.00 | M.G. |
| 20 | RAFXCEL(BOA) | 2572 | 4/13/2012 | 1039 | 8,000.00 | M.G. |
| 21 | RAFXCEL(BOA) | 2572 | 4/23/2012 | 1041 | 9,900.00 | M.G. |
| 22 | RAFXCEL(BOA) | 2572 | 4/27/2012 | 1045 | 9,900.00 | M.G. |
|  | **TOTAL** |  |  |  | 149,258.66 |  |

9. On or about April 23, 2012, within the District of Maryland,

**ANTHONY JEAN-CLAUDE,**

the defendant herein, with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, to wit: a scheme and artifice to defraud waste collection businesses of property having a value of $5,000 or more, i.e., waste vegetable oil, in violation of 18 U.S.C. § 2314, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of the specified unlawful activity, namely, that **JEAN-CLAUDE** provided R.M. with check number 1041 in the amount of $9,900 in the name of R.M.'s wife, M.G., drawn on Bank of America account ending in 2572; R.M. cashed check number 1041 at **JEAN-CLAUDE**'s direction, used a portion of the cash for the operations of the Leland Avenue facility, and gave the balance of the cash back to **JEAN-CLAUDE**.

18 U.S.C. § 1956(a)(1)(B)(i)

Date: 1/28/14

/s/ Rod J. Rosenstein
Rod J. Rosenstein
United States Attorney